IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

BRENTREZ JARMYKUS MCPHERSON,

    Plaintiff,

  v.

ALICIA EPPERSON; and LIEUTENANT SUMNER,

    Defendants.

CIVIL ACTION NO.: 6:21-cv-34

## ORDER AND REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants Epperson and Sumner's Motion to Dismiss. Doc. 26. Defendants move to dismiss based on Plaintiff's failure to exhaust his available administrative remedies. Plaintiff filed a Response, opposing Defendants' Motion. Doc. 29. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Complaint based on his failure to exhaust his available administrative remedies. Because I have recommended dismissal of Plaintiff's Complaint, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*. I **DENY as moot** Plaintiff's Motion for Default Judgment, doc. 32, to which Defendants responded, doc. 33.

## PROCEDURAL HISTORY

On April 20, 2021, Plaintiff filed his Complaint, alleging Defendants were deliberately indifferent to a serious medical need after Plaintiff was sprayed with pepper spray on January 18, 2021, while incarcerated at Smith State Prison ("SSP"). Docs. 1, 15. After conducting frivolity

review, the Court dismissed several Defendants.  However, Plaintiff was permitted to proceed on his Eighth Amendment deliberate indifference claim against Defendants Epperson and Sumner. Docs. 19, 20, 23.

Plaintiff alleges that while he was incarcerated at Smith State Prison, he was attacked by an unknown prisoner who had stolen Defendant Sumner's pepper spray.  Doc. 1 at 5.  Plaintiff states the unknown prisoner escaped his cell and then proceeded to spray Plaintiff with the stolen pepper spray.  Id.  Defendant Sumner and Epperson allegedly denied Plaintiff medical treatment resulting from the pepper spray incident.  Id.

Defendants argue Plaintiff's claims against them should be dismissed because Plaintiff failed to properly exhaust his available administrative remedies prior to filing suit.  Doc. 26. Plaintiff filed a Response to Defendants' Motion to Dismiss.  Doc. 29.

## DISCUSSION

### I. Prison Litigation Reform Act's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA

2

requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.     Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 136 S. Ct. at 1858–59; Turner, 541

F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 748 F. App'x at 202 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding

exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III.     Applying Turner

#### A.     The Georgia Department of Corrections' ("GDC") Administrative Remedies

Smith State Prison utilizes the GDC procedure for prisoner grievances. Doc. 26-2 at 2. The GDC's grievance procedure is set out in Standard Operating Procedure ("SOP") 227.02. Doc. 26-3. Inmates are orally instructed on the grievance process upon admission to SSP and also receive an outline of the process in their copy of the inmate Orientation Handbook. Doc. 26-2 at 2. Inmates may also review SOP 227.02 at the law library at SSP. Id.

Under SOP 227.02, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" that "personally affects the offender." Doc. 26-3 at 5. The grievance procedure consists of two steps, the original grievance and the Central Office Appeal. Id. at 8– 15. Under SOP 227.02, original grievances must be filed within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance. Id. at 8. The Warden has 40 calendar days to respond to a grievance. Id. at 11. The Warden can request a one-time 10-day extension to respond; however, the inmate must be advised of any extension. Id. If the inmate is dissatisfied with the Warden's response to his original grievance or if the time allowed for the Warden's response has expired, an inmate may appeal the decision to the Central Office. Id. at 11, 14. An inmate has seven days from the date of the Warden's response to file a Central Office Appeal. Id. at 14. The Commissioner has 120 days to respond to the Central Office Appeal. Id. at 15. After filing a Central Office Appeal and receiving a response, the grievance procedure is complete. Doc. 26-2 at 5.

Further, the policy limits inmates to two active grievances. Doc. 26-3 at 6. To file a new grievance while he has two pending, an inmate may voluntarily drop an outstanding grievance. Id. If the inmate does not want to drop one of his outstanding grievances, the third grievance will not be processed. Id. The following three types of grievances do not count toward the two-grievance limit: (1) emergency grievances; (2) grievances that involve allegations of physical abuse with significant injury to the inmate or sexual assault; and (3) grievances that the Grievance Coordinator determines involves an important issue of prison security or administration, such as a serious threat to life, health, or safety of any person. Id. at 7.

### B.     Plaintiff Failed to Exhaust His Available Administrative Remedies

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82. The parties' factual allegations do not conflict. Plaintiff agrees Grievance Number 321007 is the only grievance pertaining to this suit, that grievance was denied, he appealed the denial, and he did not receive a response to that appeal until August 18, 2021—months after he filed this suit.[1] Doc. 29 at 1. Instead, the parties disagree about the legal implications of Plaintiff's Grievance Number 321007 and whether his pursuit of that grievance constitutes proper exhaustion.

---

[1] Plaintiff filed three grievances while at SSP between January 18, 2021 (the date he was allegedly pepper sprayed) and April 30, 2021 (the date he filed his Complaint). Doc. 26-2 at 5; Doc. 26-4 at 1. Plaintiff filed Grievance Number 321007 on February 16, 2021, which concerned the January 18, 2021 incident and Defendants' alleged deliberate indifference. Doc. 26-5 at 4. Plaintiff filed Grievance Number 321971 on March 18, 2021, complaining he was exposed to COVID-19, and Grievance Number 323808 on April 27, 2021, stating he had been denied the opportunity to speak with his family for two months. Doc. 26-6 at 3; Doc. 26-7. The March 18 and April 27 grievances plainly do not relate to the issues in this case, as Plaintiff acknowledges. See Doc. 29 at 1. Thus, the Court only needs to determine if Plaintiff exhausted available administrative remedies by way of the February 16, 2021 grievance (Grievance Number 321007).

Plaintiff initiated Grievance Number 321007 on February 16, 2021. On March 19, 2021, Grievance Number 321007 was denied because it was not timely filed. Doc. 26-5 at 3. Under the GDC's grievance policy, Plaintiff was required to file a grievance within 10 days from the date he knew or should have known of the facts giving rise to the grievance. Doc. 26-3 at 8. The events giving rise to this lawsuit occurred on January 18, 2021. Doc. 1 at 5. Therefore, Plaintiff was required to file a grievance by January 28, 2021. Plaintiff did not file a grievance until February 16, 2021. Doc. 26-5 at 4–5. Because Plaintiff did not file his grievance within 10 days as required by GDC policy, he failed to properly exhaust. Woodford, 548 U.S. at 91–92 ("Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules."); Johnson, 418 F.3d at 1159 ("[A]n untimely grievance does not satisfy the exhaustion requirement of the PLRA.").

In response, Plaintiff contends his failure to file a timely grievance should be excused because the GDC has a "two active grievance policy," which rendered the grievance procedure unavailable to him. Id. at 2. Plaintiff alleges this policy meant he could not have filed a grievance related to the January 18, 2021 incident within 10 days and his failure to do so should be excused because GDC's two active grievance policy is unconstitutional. Id. at 2–4. In other words, Plaintiff argues the grievance process was unavailable based on the two-active-grievance rule.

The Eleventh Circuit has concluded the "two grievance limit" aspect of Georgia's grievance policy does not "render the grievance process unavailable for purposes of the PLRA." Pearson v. Taylor, 665 F. App'x 858, 868 (11th Cir. 2016); see also Phillips v. Deal, No. 5:15-cv-00249, 2016 WL 5539772, at *5 (M.D. Ga. July 25, 2016) ("Contrary to Plaintiff's argument, the [Georgia] Department of Corrections' grievance limit does not render administrative

9

remedies unavailable."), *adopted by* 2016 WL 5660450 (M.D. Ga. Sept. 28, 2016). As noted in Pearson, "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." 665 F. App'x at 868 (citing Jones v. Bock, 549 U.S. 199, 218 (2007)).

Like in Pearson, the two-grievance limitation Plaintiff challenges is defined by the prison grievance process itself. While Plaintiff was limited to two active grievances at any one time, the evidence reflects he was allowed to withdraw a pending grievance and file a new one. Plaintiff "had an available route to exhaust his claims . . . according to the applicable procedural rules, even if it would have required him to prioritize his grievances." Pearson, 665 F. App'x at 868. Thus, the two-active grievance policy did not render administrative remedies unavailable to Plaintiff.

Defendants have also demonstrated Plaintiff failed to exhaust for another reason. Plaintiff appealed the denial of Grievance Number 321007 on March 24, 2021. On April 26, 2021—before Plaintiff received any response on his grievance appeal—Plaintiff filed this suit. Doc. 1 at 13. In fact, Plaintiff did not receive a response on his Central Office Appeal until August 18, 2021, nearly four months after he initiated this lawsuit. Doc. 26-5 at 1–2. Plaintiff concedes the grievance process was not complete until August 18, 2021, when he received the Central Office Appeal response. Doc. 29 at 1–2. Plaintiff provides no explanation for why he filed this suit before receiving a response to his Central Office Appeal.[2]

---

[2] Plaintiff's arguments about the two-grievance policy have no bearing on whether Plaintiff completed the grievance process—including all appeals—before he filed this suit. It is undisputed Plaintiff filed Grievance Number 321007 on March 24, 2021, presumably because he no longer had two grievances pending. While the two-grievance policy resulted in denial of Grievance Number 321007 as

Plaintiff's failure to complete the grievance process before he filed suit demonstrates he failed to exhaust. Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'"); Sewell, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted)).

Plaintiff makes one additional argument to avoid dismissal based on failure to exhaust administrative remedies. Plaintiff acknowledges he completed the grievance process after he filed suit but points out he completed the process before the Court screened his Complaint under § 1915, and, therefore, he argues he properly exhausted his administrative remedies. Plaintiff's argument is contrary to established law. The screening date is not determinative to the exhaustion analysis. Sewell, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies); Leal, 254 F.3d at 1279 ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court."). A plaintiff must exhaust before filing suit—which in this case means April 30, 2021. Because Plaintiff did not receive a response to his appeal until August 18, 2021, he failed to exhaust his administrative remedies prior to filing suit.[3]

---

untimely, it did not prevent Plaintiff from filing that grievance, meaning the policy did not render administrative remedies unavailable.

[3] Because of the conclusions reached here, it is not necessary to address Plaintiff's separate constitutional challenge to the GDC's two active-grievance policy. Plaintiff initiated Grievance Number 321007 concerning the facts of this suit and appealed denial of that grievance, but then he filed suit before

Therefore, under Turner step one, I conclude Plaintiff failed to exhaust his available administrative remedies before bringing suit. Consequently, the Court should **GRANT** Defendants' Motion and **DISMISS** Plaintiff's Complaint based on his failure to exhaust his administrative remedies.

### IV.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when she seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.

---

the appeal was resolved. For that reason alone, it is clear Plaintiff failed to properly exhaust his administrative remedies. Accordingly, the Court need not address Plaintiff's constitutional challenge. See Wright v. Brown, 817 F. App'x 797, 803 (11th Cir. 2020) (declining to address whether GDC's two grievance policy is constitutional because the plaintiff's failure to exhaust was not due to the two-grievance policy).

2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion to Dismiss and Plaintiff's Response, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss. Doc. 26. Additionally, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust his available administrative remedies. Because I have recommended dismissal of Plaintiff's Complaint, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*. I **DENY as moot** Plaintiff's Motion for Default Judgment.[4] Doc. 32.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a

---

[4] Plaintiff's motion for default judgment is meritless. Plaintiff complains Defendants have not filed a timely Answer in this case, despite having been served. Doc. 32. Defendants correctly point out they filed a timely Motion to Dismiss, doc. 26, and, therefore, in accordance with Federal Rule of Civil Procedure 12, they are not required to file an Answer until after the Court rules on their Motion to Dismiss. Doc. 33. Even if Plaintiff's Motion for Default Judgment were not moot, it should be denied on the merits.

party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 5th day of July, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA